## Commonwealth ex rel. Scolio *v.* Hess, Warden, Appellant.

372

Argued April 14, 1942.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Hirt and Kenworthey, JJ.

*Burton R. Laub,* District Attorney, with him *Paul B. Joslin,* Assistant District Attorney, for appellant.

*Edward E. Petrillo,* for appellee.

Opinion by Keller, P. J., July 23, 1942:

The district attorney of Erie County, acting for the warden of Erie County Prison, has appealed from an order of the court of common pleas of that county, entered pursuant to a writ of habeas corpus, discharg-

ing the relator, Vincent Scolio, from the custody of the said warden.

The petition for writ of habeas corpus was filed pursuant to the Act of July 1, 1937, P. L. 2664,[1] which empowers the judge granting the writ to examine and inquire into the proceedings held and evidence produced before a committing magistrate and to discharge the prisoner, if the proceedings were not conducted in accordance with law or the evidence is insufficient to hold him.

On August 30, 1941, complaint was made by the county detective of Erie County before Alderman Heisler of the City of Erie charging the relator, Vincent Scolio, and Concetta Colagrossi, alias Concetta Scolio, alias Lena Carbone, and Marjorie Miller, alias Marjorie Mobile, jointly, with having unlawfully conspired together to use a certain building, to-wit, 135 West 15th St., Erie, Pennsylvania, for the purpose of prostitution or assignation.

The defendants having been arrested, a hearing was had before the said alderman on Tuesday, September 9, 1941, who, on the same day, after hearing witnesses, returned the case to the *next* term of the court of quarter sessions.

A regular term of the Court of Quarter Sessions of Erie County was fixed to begin on the second Monday of September, which in 1941 was September 8. The next regular term began on the second Monday of November, that is, on November 10, 1941.

For some reason, which was not explained to us, the *trial of cases* at the September Term was postponed until the week beginning September 15, 1941. That,

---

[1] See also, Section 1 of Act of February 18, 1785, 2 Sm. L. 275, which empowers the judge, granting the writ of habeas corpus, "by investigating the truth of the circumstances of the case to determine, whether, according to law, the said prisoner ought to be bailed, remanded or *discharged*."

however, did not affect the return of cases by justices of the peace, etc., and the case against Scolio and his co-defendants, which was heard on September 9, 1941, was properly returnable to the *next* term, viz, the *November* term of court.

On September 15, 1941, nearly two months "next preceding the term ...... of ...... court, where the offense with which he [stood] charged [was] properly recognizable",[2] Vincent Scolio filed in the court of common pleas his petition for writ of habeas corpus, on which President Judge KITTS awarded a writ directed to the warden of the Erie County Prison commanding him to bring the body of said petitioner before the Court on September 24, 1941 at 9:30 o'clock A.M.

At the hearing, a transcript of the testimony taken by the court stenographer before Alderman Heisler was produced. It does not appear from the record certified to us that any other testimony was presented.

On November 10, 1941, the President Judge filed his opinion holding that no prima facie case of guilt had been made out against the relator, Vincent Scolio, and ordered his discharge.

We have carefully read the testimony in the record certified to us and are of opinion that it did not justify the order of the alderman holding the relator for court; and, as nothing more was produced before the court below, that it was not sufficient to warrant his being remanded for trial by a petit jury.

We do not mean to hold that on a hearing before a committing magistrate, or on a habeas corpus hearing, the Commonwealth must produce evidence of such character and quantum of proof as to require a finding by a *jury* of the accused's guilt, *beyond a reasonable doubt*. But it should be such as to present "sufficient probable cause to believe that the person charged has committed the offense stated" (*United States v. Johns*,

---

[2] See section 6 of the Act of February 18, 1785, 2 Sm. L. 275.

4 Dallas 412, 413) ; in other words, it should make out a prima facie case of guilt. It should be such that if presented at the trial in court, *and accepted as true*, the judge would be warranted in allowing the case to go to the jury.

The testimony in this case fell far short of that measure.

Lena Carbone, also known as Concetta Lena Cola-grossi and Mrs. Vincent Scolio, was the owner of the premises No. 135 West 15th Street for at least two years prior to March, 1941, when she sold it. She placed the renting of the property in the hands of the Ros-siter-Kessler Corporation, real estate agents. The latter made the lease for the premises with one Irene King. The owner had nothing to do with the selection of the tenant; that was left entirely to the discretion of the real estate agents.

There was testimony that Marjorie Miller, also known as Marjorie Mobile, one of the defendants, had stated that she had been a prostitute at said house and had been convicted of being the proprietress of it; but the relator, Vincent Scolio, was not linked up in any *conspiracy* with her. If the making of a lease or the acceptance of rent, by itself, were sufficient evidence of such conspiracy, the Commonwealth should have prosecuted the real estate agents, for they selected the tenant, made the lease, and collected the rent. They ought to have known, better than the owner, or her husband, the character of the lessee and the nature of the business conducted by her.

The only connection that this relator was shown to have had with the matter was that on several occasions when the rent had not been paid at the time designated in the lease, he had *collected* the rent, paid it into the agency, so that they got their commission and kept the account accurately, and then received from the agency a check for the net rent due Mrs. Colagrossi, made out in her name.

This, of itself, was not enough to make out a prima facie case of conspiracy against him as alleged in the indictment. On the trial of the case it would have been insufficient to justify its submission to the jury, as respects the relator. See *Com. v. Marino,* 142 Pa. Superior Ct. 327, 16 A. 2d 314; *Com. v. Byers,* 45 Pa. Superior Ct. 37, 39; *Com. v. Bardolph,* 326 Pa. 513, 525, 192 A. 916.

Appeal dismissed.