Commonwealth *v.* Thorne, Appellant.

94

Submitted September 17, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Reggie B. Walton* and *John W. Packel,* Assistant Defenders, and *Vincent J. Ziccardi,* Defender, for appellant.

*John D. Cooper, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P. J., April 22, 1975:

On April 17, 1972, at about 11:30 P.M., the proprietor of a restaurant closed his shop but remained in the store awaiting the arrival of a regular customer who had called in an order. When the customer arrived, the owner of the store unlocked the door to let him in. As he entered, Michael Thorne, the appellant, forced his way in at gun point and ordered Giangreco to back up to the middle of the store. He then ordered him to open the cash register and scoop up the money while holding Giangreco and Waltz, the customer, and two other employees at bay with his gun. Giangreco, Waltz and an employee, Gary Goldner, testified to these facts and to the identity of the robber.

On May 25, 1972, Giangreco and Waltz attended a line-up in which the appellant (who had been arrested on another charge and was used as a filler) was exhibited but they failed to identify him.

As a result of information obtained by police, the appellant was arrested while in custody and charged with the current crimes. He was told of the charges, advised of his rights and, after waiving them, gave a statement to the police. On June 13, 1972, Giangreco and Waltz attended a preliminary hearing and identified him as the robber as soon as he entered the room.

The appellant moved to suppress the identification evidence of Giangreco and Waltz and the statement given to the police by the appellant. But, after the case was listed for trial, and continued several times, counsel for the appellant, the public defender, filed a memorandum with the court which is a part of the record and withdrew the petition for suppression. He believed the statement to be exculpatory.

When the case was called to trial, the trial attorney for the appellant moved to reinstate the petition after some members of the jury were chosen and the rest of the panel awaiting call. The petition was refused by the court

below because the appellant had ample opportunity to do so prior to trial and no good could be accomplished by now having a collateral hearing at that stage of the proceeding. It should be here noted that the burglary took place on April 17, 1972; that the preliminary hearing took place on June 13, 1972, and the case was first listed for trial on August 29, 1972. The trial of the case began on January 15, 1973 when the motion to reinstate was made.

Appellant contends that this was error with which we cannot agree. The eye-witness had ample opportunity to observe the appellant at the scene of the crime, gave an adequate and accurate description to the police and were able to immediately identify him at the preliminary hearing under circumstances which in no way suggested appellant was the perpetrator of the crime. A third eye-witness, as well as these two, at trial identified him without any opportunity to see him since the night of the crime. The witnesses gave several reasons for their failure to identify him at the line-up where he appeared as a filler.

Under all these circumstances, the court did not abuse its discretion in refusing to reopen the petition to suppress as to identification or in considering the matter waived under Pennsylvania Rules of Criminal Procedure, Rule 323 (b). *Commonwealth v. Brown,* 226 Pa. Superior Ct. 30, 312 A.2d 428 (1973).

Appellant further urges that his statement given to the police should have been suppressed because it was given at a time when he was incarcerated on another charge, prior to preliminary hearing, after all warnings were given but not in the presence of counsel. This was not a critical stage in the proceedings under *Commonwealth ex rel. Johnson v. Rundle,* 440 Pa. 485, 270 A. 2d 183 (1970) and no abuse of discretion in its admission was shown.

Appellant contends he was denied effective assistance of counsel because of the withdrawal of the petition to

suppress. This is without merit in that the memorandum filed of record indicates a reasonable trial strategy. *Commonwealth v. Hill*, 427 Pa. 614, 235 A.2d 347 (1967). This question was not raised in the court below and is not properly raised before this Court on direct appeal. *Commonwealth v. Agie*, 449 Pa. 187, 296 A.2d 741 (1972).

The appellant also contends that it was error for the court to refuse a point for charge in Commonwealth's failure to call an eye-witness. There were four people in the shop at the time of the incident. The names of these witnesses were supplied to the appellant at trial. Three were called by the Commonwealth and the District Attorney informed the appellant that the fourth witness would not be called but supplied his name and address. Appellant's counsel got in touch with the witness the next day and informed the court that he could not identify or describe the hold-up man. However, the appellant failed to call him so that it is impossible to tell what his testimony would have been. The Commonwealth considered his testimony was surplusage. *Commonwealth v. Zapata*, 447 Pa. 322, 290 A.2d 114 (1970).

This is the kind of case where an obviously guilty defendant tries to take advantage of the law itself to delay justice taking its proper course. It is the kind of case about which the media and the public generally are making an outcry in the face of the mounting crime rate. It was an armed robbery in which a number of people were held at bay at gun point. Giangreco, the proprietor of the restaurant, Waltz and Goldner, identified the robber. In the face of this record, it would be clearly unreasonable to remand this case for further action by an already overburdened lower court on the ground of inadequate counsel. It is so easy for new counsel in seeking justification for an appeal to castigate trial counsel as inadequate when he wasn't faced with the problems that confronted trial counsel when decisions had to be made.

This is especially true when the court below had before it in writing the reasons on which counsel based his

trial strategy. It should also be pointed out that the Defender Association represented the defendant from the beginning although one counsel appeared at the suppression hearing, another at trial, and a third on appeal. So we have the peculiar situation of one counsel of the Defender's Association accusing another counsel of the same association of incompetency.

For all of these reasons we affirm.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant contends that he was denied effective assistance of counsel because his trial counsel withdrew pre-trial motions to suppress identification evidence and a statement allegedly made by appellant.

This case arose as the result of a robbery of Francesco's Pizzeria in Philadelphia at approximately 11:30 p.m., on April 17, 1972. An armed intruder entered the store and ordered Joseph Giangreco, the proprietor, to open the cash register and give him money. James Waltz, a customer, and Gary Goldner and Michael Granata, both employees, also observed the robbery. A third employee, who was working in a back room, did not see the intruder.

On May 25, 1972, Giangreco and Waltz both attended a police lineup. The appellant, who had been arrested on another charge, was included in the lineup as a filler. Neither identified the appellant as the intruder. Waltz did not select anyone; Giangreco identified a person other than the appellant, one Joseph Smith. On May 24, 1972, Detective Rosenstein had obtained information from one Rickey Miller implicating appellant as the intruder. Detective Rosenstein then had an arrest warrant issued for appellant, who was still in custody on the other charges. On June 2, 1972, after being advised of his *Miranda* rights, appellant allegedly made a statement admitting participation in the robbery. This statement was typed by the detective, but appellant refused to sign it. On June

13, 1972, at a confrontation at a preliminary hearing, Giangreco identified appellant as the robber. Waltz also observed the appellant in custody at that hearing. Appellant alleges that this confrontation, coming after the witnesses' failure to identify at a regular lineup, was excessively suggestive.

On August 29, 1972, appellant's original Defender Association attorney filed a motion to suppress the identification testimony of Giangreco and Waltz.[1] A motion was also filed to suppress appellant's alleged confession. On October 17, 1972, a second defender withdrew the suppression motions. A third defender represented appellant at trial. On January 16, 1973, the first day of appellant's trial, after five jurors had already been selected, she attempted to reinstate the suppression motions. A second attempt at reinstatement was made on the second day of trial. These motions were denied. On January 19, 1973, appellant was found guilty by the jury of burglary and aggravated robbery. Post-trial motions were denied, and appellant was sentenced to five to fifteen years' imprisonment. This appeal followed.

Appellant alleges that he was denied effective assistance of counsel by the fact that the second defender who represented him during pretrial motions failed to pursue the motions to suppress the statement and the eyewitness identifications.[2] The Commonwealth contends that the ap-

1. Appellant has been represented throughout trial and appeal by the Defender Association. Appellant has been advised of his right to secure independent counsel, but has chosen not to do so.

2. Appellant also contends that this case falls within one of the two exceptions to Rule 323(b), Pa.R.Crim.P., which requires that such a motion to suppress ordinarily be made "not later than ten days before the beginning of the trial session in which the case is listed for trial, except that in any judicial district having continuous trial sessions said application shall be filed not later than ten days before the day the case is listed for trial." Appellant first contends that "the opportunity [to file such motions] did not pre-

pellant has waived this claim of ineffective assistance of counsel by failing to raise the issue in the lower court. I cannot accept this contention. If trial counsel, as alleged, lacked the competence to pursue timely motions to suppress evidence, we cannot expect the same counsel[3] to make a contemporaneous objection of record to his own incompetence.

Nor does the memorandum written by the second defender and presented to our Court necessarily indicate a reasonable trial strategy. In that memorandum, dated October 17, 1972, the same date on which trial counsel withdrew appellant's suppression motions, the second defender concluded that "[t]here were no motions to suppress argued as both the I.D. + the stmt. are jury questions." Rather than indicating a conscious choice of trial tactics, see *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A. 2d 349 (1967), this memoran-

---

viously exist . . ." Although the case may have been handed from one defender to another, the Defender Association, taken as a whole, certainly had the opportunity to file timely motions. Appellant next argues that in this case "the interests of justice" required that belated motions to suppress be maintained. The lower court assumed that the motions had been withdrawn as the result of a decision of trial strategy by competent counsel for appellant. If this assumption was correct, the lower court did not err in denying a belated motion to suppress. If that assumption was incorrect, the issue will be dealt with on remand under the rubric of incompetence of counsel.

3. *Commonwealth v. Dancer*, 460 Pa. 95, 331 A. 2d 435 (1975), indicates that ineffectiveness of counsel is not waived, even when it is not raised on direct appeal, where the appellant is represented on appeal by the same counsel who represented him at trial. A fortiori, appellant cannot be said to have waived this claim by failure to raise it at trial. The record indicates that appellant has been represented throughout trial and appeal by the same institutional attorney, the Defender Association of Philadelphia. The appearance card in the court below, and appellant's brief in this Court, both bear the names of that organization and its then chief Defender.

dum, taken by itself, might indicate that trial counsel was unaware of or indifferent to the possibility of filing a motion to suppress before the court, and if that motion proved unsuccessful, later attempting to impeach the same evidence before the jury. "If, however, counsel's failure to [pursue an alternative trial tactic] was the result of sloth or lack of awareness of the available alternatives, then his assistance was ineffective." *Commonwealth v. Twiggs,* 460 Pa. 105, 111, 331 A. 2d 440, 443 (1975).

As it cannot be determined from this memorandum and the record before us whether or not the actions of the trial counsel complained of were ineffective, we should remand to the lower court for an evidentiary hearing on the effectiveness of trial counsel. "If upon remand, the court decides that counsel's determination did not meet this standard, [a reasonable basis designed to effectuate his client's interests,] a new trial shall be awarded." *Commonwealth v. Twiggs,* supra, at 111, 331 A. 2d at 443.[4] *See also, Commonwealth v. Strachan,* 460 Pa. 407, 333 A. 2d 790 (1975).

I would reverse and remand with a procedendo.[5]

CERCONE and SPAETH, JJ., join in this dissenting opinion.

---

4. *Twiggs,* like the instant case, was a direct appeal from a judgment of sentence. In remanding for a hearing on effectiveness, it would not have to be decided whether the suppression motions, if promptly filed, would have been meritorious.

5. Appellant also contends that the lower court erred in refusing to grant a point for charge concerning the Commonwealth's failure to call Michael Granata, a fourth eyewitness to the events in the pizzeria. This issue need not be decided at this point. "Following the hearing court's decision, the parties may appeal its order if they so desire. On that appeal, they may also raise any issues presented and undecided in the instant appeal." *Commonwealth v. Twiggs,* 460 Pa. at 111, 331 A.2d at 443.